# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:08-CV-569-RJC-DCK

| ASSURANT, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| MEDASSURANT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Rule 12(b)(6) Motion To Dismiss Defendant's Second Amended Counterclaims" (Document No. 39). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for review. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Assurant, Inc. ("Assurant" or "Plaintiff") filed its "Complaint" (Document No. 1) in this action on December 10, 2008. The Complaint asserts claims against MedAssurant, Inc. ("MedAssurant" or "Defendant") for: (1) Service Mark Infringement and False Designation of Origin; (2) Federal Trademark Dilution; (3) Unfair Competition; and (4) Unfair and Deceptive Trade Practices.

Plaintiff is a provider of insurance products and services, including health insurance and related health care services, as well as business and financial services, organized under Delaware law, with a principal place of business in New York, New York. (Document No. 1 ¶ 1). Defendant is a health care information technology company, also organized under Delaware law, and has a

principal place of business in Bowie, Maryland. (Document No. 38 at ¶¶ 1 and 4). The action is brought pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, N.C. Gen. Stat. § 75.1-1, and North Carolina common law. (Document No. 1 at ¶ 3).

The Complaint principally contends that Defendant's use of the name "MedAssurant" and associated internet domain names unlawfully infringes on Plaintiff's trademarks, in violation of the Lanham Act, and has caused, or will cause, irreparable damage. Id. at ¶¶ 21-31. In conjunction with its promotion, advertising, and sale of products and services, Plaintiff owns a number of service marks, including: "ASSURANT" - U.S. Reg. No. 2,543,367, issued February 26, 2002; "ASSURANT HEALTH" - U.S. Reg. No. 2,974,177, issued July 19, 2005; "ASSURANT and Design" - U.S. Reg. No. 3,107,738, issued June 20, 2006; "ASSURANT and Design" - U.S. Reg. No. 3,114,932, issued July 11, 2006; "ASSURANT and Design" - U.S. Reg. No. 3,124,333, issued August 1, 2006; "ASSURANT EMPLOYEE BENEFITS" - U.S. Reg. No. 2,946,817, issued May 3, 2005; and, "ASSURANT PRENEED" - U.S. Reg. No. 2,916,407, issued June 7, 2005. Id. at ¶¶ 7-14. The Complaint further contends that Defendant's continued use of "MedAssurant" will dilute the distinctive quality of Plaintiff's ASSURANT mark, unfairly trades on the good will Plaintiff has created in its family of service marks, and constitutes unfair and deceptive trade practices. Id. at ¶¶ 34, 37, and 41. Plaintiff seeks injunctive relief, as well as damages, including treble damages, costs and attorneys' fees.

"Defendant And Counter-Claimant's Answer, Affirmative Defenses, Counterclaims, And Demand For Jury Trial" (Document No. 15) was filed on February 19, 2009, followed by "Plaintiff's Rule 12(b)(6) Motion To Dismiss Defendant's Counterclaim" (Document No. 18) filed March 12, 2009. After an exchange of briefs regarding the first motion to dismiss (Document No.

18), "Defendant And Counter-Claimant's Amended Counterclaims" (Document No. 22) was filed. Subsequently, the Court denied Plaintiff's first motion to dismiss. (Document Nos. 25 and 28).

On May 6, 2009, "Plaintiff's Rule 12(b)(6) Motion To Dismiss Defendant's Amended Counterclaims" (Document No. 23) was filed. Following full briefing of Plaintiff's second motion to dismiss, Defendant sought and received the Court's approval to file "Defendant And Counter-Claimant's Second Amended Counterclaims" (Document No. 39), thus mooting Plaintiff's second motion to dismiss. (Document No. 41). Defendant's Second Amended Counterclaims principally contend that Plaintiff's trademark rights should be cancelled as invalid, highly diluted, unworthy, generic, and/or fraudulently obtained. (Document No. 38).

Now before the Court for consideration is "Plaintiff's Rule 12(b)(6) Motion To Dismiss Defendant's Second Amended Counterclaims" (Document No. 39), which again seeks the dismissal of Defendant's counterclaims.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Twombly, 550 U.S. at 570; see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

The question before the Court is whether Defendant's counterclaims seeking cancellation of Plaintiff's registered trademarks should be dismissed. Pursuant to Title 15 of the United States Code, Section 1119, "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119.

> The Court ought dismiss a counterclaim if the counterclaimant fails to allege a "plausible entitlement to relief." . . . The counterclaimant is obliged to plead "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do."

4

> . . . The Court is only required to look at the allegations set forth in the counterclaim and must deny a motion to dismiss if, under any theory, the allegations are sufficient to state a cause of action.

Bose Corp. v. Lightspeed Aviation, Inc., 691 F.Supp.2d 275, 278 (D.Mass. 2010)(citations omitted). "A defendant in a trademark infringement case 'may counterclaim for cancellation of [plaintiff's] registration.'" Sweetwater Brewing Co., LLC v. Great American Restaurants, Inc., 266 F.Supp.2d 457, 465 (E.D.Va. 2003) (citing 2 McCarthy § 30:109). "The party requesting cancellation bears the burden 'of overcoming the evidentiary effect of a federal registration.'" Id.

The Fourth Circuit has held that

> It is well established that when the PTO issues a certificate of registration, that registration provides the registrant with prima facie evidence of 1) the validity of the mark and its registration, 2) the registrant's ownership, and 3) the registrant's "exclusive right" to use the mark on or in connection with the goods and services specified in the certificate of registration.

Sweetwater Brewing Co., LLC v. Great American Restaurants, Inc., 266 F.Supp.2d 457, 461-62 (E.D.Va. 2003) (quoting U.S. Search, LLC v. U.S. Search.com Inc., 300 F.3d 517, 524 (4th Cir. 2002). In considering cancellation of a trademark registration, "a court is restricted to the grounds for administrative revocation of a trademark found in 15 U.S.C. § 1064." Pepper Patch, Inc. v. Bell Buckle Country Store, Inc., 2006 WL 2037560 at *6 (M.D.Tenn. 2006) (citing Shakespeare Co. v. Silstar Corp., 9 F.3d 1091, 1097 (4th Cir. 1993)); see also, American Angus Assoc. v. Sysco Corp., 865 F.Supp. 1180, 1183 (W.D.N.C. 1994). The district court's power is "concurrent with, but not in excess of, the Patent and Trademark Review Board" and "is also limited by the language of the statutes controlling the Board." Shakespeare Co., 9 F.3d at 1092.

As Defendant acknowledges, 15 U.S.C. § 1064 provides that a petition to cancel a registration must be filed by a petitioner with standing and show "that there is a valid ground why

5

the registrant is not entitled under law to maintain registration." (Document No. 42, pp. 5-6)(citing Young v. AGB Corp., 152 F.3d 1377, 1379 (Fed.Cir. 1998). Valid ground for cancellation of a mark registered less than five years is "any ground that would have prevented registration in the first place." Cunningham v. Laser Golf Corp., 222 F.3d 943, 945-46 (Fed. Cir. 2000). "The 'valid ground' that must be alleged and ultimately proved by a cancellation petitioner must be a 'statutory ground which negates the appellant's right to the subject registration.'" Young, 152 F.3d at 1380 (quoting Lipton Indus. Inc. v. Ralston Purina Co., 670 F.2d 1024, 1030 (C.C.P.A. 1982)). See also, 3 *McCarthy on Trademarks and Unfair Competition* § 20:52 (4th ed.)

Title 15 of United States Code, Section 1064, states in pertinent part:

> A petition to cancel a registration of a mark, stating the grounds relied upon, may . . . be filed as follows by any person who believes that he is or will be damaged, including as a result of a likelihood of dilution . . . under section 1125(c) of this title, by the registration of a mark on the principal register established by this chapter . . . .
>
> (1) Within five years from the date of the registration of the mark under this chapter.
> ....
> (3) **At any time** if the registered mark **becomes the generic name for the goods or services**, or a portion thereof, . . . or **is functional**, or **has been abandoned**, or its registration **was obtained fraudulently** or contrary to the provisions of section 1054 of this title or of subsection (a), (b), or (c) of section 1052 of this title .... If the registered mark becomes the generic name for less than all of the goods or services for which it is registered, a petition to cancel the registration for only those goods or services may be filed. A registered mark shall not be deemed to be the generic name of goods or services solely because such mark is also used as a name of or to identify a unique product or service. The primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services ....
> . . .

15 U.S.C. § 1064 (emphasis added).

A mark that has become "incontestable" is afforded additional protection against cancellation. Purportedly, the requirements for incontestable status have been met for ASSURANT, U.S. Reg. No. 2,543,367, pursuant to 15 U.S.C. § 1065. (Document No. 40, p.3). Under that statute, a registered mark in continuous use for five consecutive years, and still in use, can become incontestable. 15 U.S.C. § 1065. Registration of an incontestable mark is "conclusive evidence of the validity of the registered mark . . . and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). See Park 'N Fly, Inc. v. Dollar Park And Fly, Inc., 469 U.S. 189, 194-200 (1985). "The incontestability provisions . . . provide a means for the registrant to quiet title in the ownership of his mark. Park 'N Fly, Inc., 469 U.S. at 198. An incontestable mark is still subject to cancellation in some instances, including: if the mark is abandoned, becomes generic, is functional, or was obtained fraudulently. See 15 U.S.C. § 1064 and 15 U.S.C. § 1115(b).

### A.  First Counterclaim

Defendant's first claim for relief contends that Plaintiff's registered marks: "ASSURANT HEALTH" - U.S. Reg. No. 2,974,177; "ASSURANT and Design" - U.S. Reg. No. 3,107,738; "ASSURANT and Design" - U.S. Reg. No. 3,114,932; "ASSURANT and Design" - U.S. Reg. No. 3,124,333; "ASSURANT EMPLOYEE BENEFITS" - U.S. Reg. No. 2,946,817; and "ASSURANT PRENEED" - U.S. Reg. No. 2,916,407; should not have been registered under 15 U.S.C. § 1052(e) in the first instance because they have lost their ability to distinguish Plaintiff's services. (Document No. 38 at ¶ 18). Defendant asserts that "[u]pon information and belief, there are significant numbers of third-party users of similar or variant 'ASSURANT' marks" and therefore "the mark is highly diluted and unworthy of federal trademark protection." Id.

Defendant fails here to explicitly assert valid grounds under the statutes for cancellation. Defendant's counterclaim contends that the marks should not have been registered under Section 2(e) of the Lanham Act, 15 U.S.C. § 1052(e). (Document No. 38 at p.5). The grounds for refusing registration of a trademark pursuant to 15 U.S.C. § 1052(e) are when it: "consists of a mark which (1) . . . is merely descriptive or deceptively misdescriptive . . . , (2) . . . is primarily geographically descriptive . . . , (3) . . . is primarily geographically deceptively misdescriptive of them, (4) is primarily merely a surname, or (5) comprises any matter that, as a whole, is functional." These are not the grounds articulated by Defendant in its counterclaims.

Even accepting Defendant's allegation that there are significant numbers of third-party users of "similar or variant" marks as true, Defendant has not cited, and the undersigned is unaware of, relevant authority supporting this allegation as grounds for cancellation of a registered mark. Neither the criteria for refusing registration under 15 U.S.C. § 1052(e), nor the criteria for cancelling a registration under 15 U.S.C. § 1064, include reference to the use of similar or variant marks by third parties as valid grounds for denying or cancelling registration. Defendant's response to the motion to dismiss re-states its first counterclaim for relief, but fails to offer any case law or other authority in support.

Defendant asserts that there are significant numbers of third-party users of similar or variant "ASSURANT" marks for a variety of goods and services and concludes that "the mark is highly diluted and unworthy of federal trademark protection." (Document No. 38, ¶ 18). It appears that Defendant is claiming that the "ASSURANT" mark itself is highly diluted, and not that the other marks challenged in this claim are highly diluted. Defendant's response to the motion to dismiss contends that "[a] mark which is highly diluted is merely descriptive of the goods or services," citing

§ 1052(e), and implying valid grounds for cancellation under § 1052(e)(1); however, the language cited in § 1052(e) does not support such a contention. (Document No. 42 at p.8).

The undersigned agrees with Plaintiff's argument that even accepting as true that the "ASSURANT" mark, or any of the other marks, are "highly diluted," addresses the strength of the mark, and does not make out legally cognizable grounds to deny registration. (Document No. 40 at p. 9). In addition, the Defendant has not stated valid grounds for a claim that the mark (or marks) challenged here should be cancelled due to dilution under 15 U.S.C. § 1064. Section 1064 references 15 U.S.C. § 1125(c), which does address relief available to an owner of a famous mark against another person causing dilution of a famous mark, but that is not a claim articulated by Defendant here. See Enterprise Rent-A-Car Co. v. Advantage Rent-A-Car, Inc., 330 F.3d 1333 (Fed.Cir. 2003).

Based on the foregoing, the undersigned finds that Defendant's first counterclaim fails to state a plausible claim for relief and will recommend that this claim be dismissed.

### B. Second Counterclaim

Defendant's second claim for relief contends that Plaintiff's registered mark ASSURANT, U.S. Reg. No. 2,543,367, has become generic and is therefore unworthy of protection and should be cancelled pursuant to 15 U.S.C. § 1064(3). (Document No. 38, ¶¶ 22-23). The statute provides that "[a]t any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered" a petition to cancel the registration may be filed. 15 U.S.C. § 1064(3).

The Fourth Circuit has provided some discussion on the issue of trademarks and genericness that provides a useful foundation for analysis of this issue:

> a proposed mark cannot acquire trademark protection unless the mark is distinctive, that is, unless it serves the traditional trademark functions of "distinguishing the applicant's goods from those of others" and identifying the source of the goods. . . . The antithesis of a distinctive mark is a "generic" mark which merely employs "the common name of a product or service," . . or "refers to the genus of which the particular product is a species,". . . Because a generic mark, by definition, neither signifies the source of goods nor distinguishes the particular product from other products on the market, a generic term cannot be protected as a trademark nor registered as one. . . . "The concepts of 'generic name' and 'trademark' are mutually exclusive" because a generic term "can never function as a mark to identify and distinguish the products of only one seller."

Retail Services, Inc. v. Freebies Publishing, 364 F.3d 535, 538 (4th Cir. 2004)(citations omitted).

Trademark registration is prima facie evidence that the registered term is not generic; however, this presumption of validity merely serves to shift the burden of producing sufficient evidence that the term is generic to the party seeking to invalidate a registration. Retail Services, Inc. v. Freebies Publishing, 247 F.Supp.2d 822, 826 (E.D.Va. 2003) aff'd, 364 F.3d 535 (4th Cir. 2004) (citing <u>Convenient Food Mart, Inc. v. 6-Twelve Convenient Mart, Inc.</u>, 690 F.Supp. 1457 (D.Md. 1988), <u>aff'd</u> 870 F.2d 654 (4th Cir. 1989)).

> When a trademark ceases to identify in the public's mind the particular source of a product or service but rather identifies a class of product or service, regardless of source, that mark has become generic and is lost as an enforceable trademark. . . .To become generic, the primary significance of the mark must be its indication of the nature or class of the product or service, rather than an indication of source. . . . The relevant class of goods and services may be that identified in the mark's certificate of registration. . . . Moreover, proof that a mark has become an indicator of a class of product or service and not its source requires more than the subjective view of a casual purchaser; there must be evidence that this is the mark's primary significance to members of the "relevant public."

<u>Glover v. Ampak, Inc.</u>, 74 F.3d 57, 59 (4th Cir. 1996)(citations omitted).

"A trademark registration can be cancelled at any time if the registered mark "becomes the

generic name for the goods or services, or a portion thereof, for which it is registered." Retail Services, Inc., 247 F.Supp.2d at 826 (quoting 15 U.S.C. § 1064(3)). "A party seeking cancellation of a trademark registration bears the burden of proving, by a preponderance of the evidence, that, in the minds of the consuming public, the significance of the registered term is the general class of product." Id. See also, Glover, 74 F.3d at 59. Evidence rebutting the presumption of validity may come from sources including "purchaser testimony, consumer surveys, listings and dictionaries, trade journals, newspapers, and other publications." Retail Services, 364 F.3d at 544 (quoting Glover, 74 F.3d at 59). "Only by showing that the public understands by the mark the class of goods or services of which the trademarked product or service is a part can the party who seeks to cancel a registration carry its burden." Glover, 74 F.3d at 59.

Even an incontestable mark may be cancelled "if the registered mark becomes the generic name for the goods or services, or a portion thereof." 15 U.S.C. § 1064(3); see also, Retail Services, Inc., 364 F.3d at 548. The Fourth Circuit has noted that

> [I]ncontestability is never a shield for a mark that is generic. Although § 1115(b) does not enumerate the generic nature of trademark as a basis for challenging an incontestable mark, a registration is subject to cancellation at any time 'if the registered mark becomes the generic name for the goods or services . . . [e]ven an incontestable mark, therefore, comes within the reach of § 1064(3) and may be canceled if it becomes generic.

Retail Services, Inc., 364 F.3d at 548.

Defendant's second counterclaim is similar to its first counterclaim, but with the notable exceptions that (1) it only targets the ASSURANT mark for cancellation, and (2) it states grounds recognized by the applicable statute ("has become generic"). In support of its claim that the mark has become generic, Defendant alleges that "[u]pon information and belief, there are significant

numbers of third-party users of similar or variant "ASSURANT" marks for a variety of health-related goods/services and other goods/services" and "[t]herefore, the mark is highly diluted and unworthy of federal trademark protection." (Document No. 38, ¶ 22).

Acknowledging the sparse factual content of the second counterclaim, the undersigned views this to be a close call; however, it appears that Defendant has met the minimum requirement of asserting a plausible claim that Plaintiff's trademark has become generic. As such, the undersigned finds that it would be premature to dismiss Defendant's second counterclaim at this early stage of the litigation and will recommend that the motion to dismiss be denied as to the second counterclaim.

### C. Third Counterclaim

Defendant's third claim for relief asserts that "the ASSURANT mark is generic under the 'doctrine of foreign equivalents,'" and therefore, all seven of the registered marks identified in this lawsuit should be cancelled. (Document No. 38, ¶¶ 26-27). Defendant concludes that because the French word "assurance" translates as "insurance," then "assurant" is generic for insurance. (Document No. 38, ¶¶ 11, 26).

"Under the doctrine of foreign equivalents, foreign words from common languages are translated into English to determine genericness, descriptiveness, as well as similarity of connotation in order to ascertain confusing similarity with English word marks." Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 1377 (Fed.Cir. 2005); see also, Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1531-32 (4th Cir. 1984). "[A] word commonly used in another language as the generic name of a product cannot be imported into the United States and be transformed into a valid trademark." 2 *McCarthy on Trademarks and Unfair Competition* § 12:41

(4th ed.) "The doctrine should be applied only when it is likely that the ordinary American purchaser would 'stop and translate [the word] into its English equivalent.'" Palm Bay Imports, Inc., 396 F.3d at 1377 (citing In re Pan Tex Hotel Corp., 190 U.S.P.Q. 109, 110 (T.T.A.B. 1976)).

This Court's authority to cancel a trademark registration is restricted to the grounds for revocation found in 15 U.S.C. § 1064. Pepper Patch, Inc., 2006 WL 2037560 at *6 (M.D.Tenn. 2006) (citing Shakespeare Co. v. Silstar Corp., 9 F.3d 1091, 1097 (4th Cir. 1993)). Section 1064 provides that a registered trademark may be cancelled "[a]t any time if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered...." Id.

The factual content pled by Defendant in support of its claim for relief is again sparse; nevertheless, the undersigned finds that the claim gives Plaintiff fair notice, and at least on its face states a plausible entitlement to relief. Whether or not Defendant can prevail on its contention that the doctrine of foreign equivalents is applicable here is an issue for another day; Defendant need not prove its claim at this stage. The undersigned will recommend that the motion to dismiss be denied as to this counterclaim.

### D. Fourth Counterclaim

Defendant's fourth and final claim for relief seeks cancellation pursuant to 15 U.S.C. § 1064(3) of the "ASSURANT" mark U.S. Reg. No. 2,543,367, contending that it was obtained fraudulently. (Document No. 38 at ¶ 30).

> A mark shall be canceled if its registration was fraudulently obtained. . . . . To prevail, [MedAssurant] must prove by clear and convincing evidence that [Assurant] "knowingly ma[de] false, material representations of fact" and intended to deceive the Patent and Trademark Office. . . . An applicant is required to state under oath that "to the best of his knowledge and belief" no one else has the right to use the mark. . . . "The oath is phrased in terms of a subjective belief, such that it is difficult ... to prove ... fraud so long as the affiant

13

or declarant has an honestly held, good faith belief."

Resorts of Pinehurst, Inc. v. Pinehurst National Corp., 148 F.3d 417, 420 (4th Cir. 1998)(citations omitted); see also, Maurag, Inc. v. Bertuglia, 494 F.Supp.2d 395, 399 (E.D.Va. 2007). A registered mark, including an incontestable mark, can be cancelled at anytime if its registration was obtained fraudulently. 15 U.S.C. § 1064(3) and 15 U.S.C. § 1115(b)(1).

Defendant's allegations of fraud revolve around the Plaintiff's use, or lack thereof, of the ASSURANT mark in connection with telemarketing and/or direct mail services. (Document No. 38 at ¶¶ 31-37). Defendant contends that Plaintiff has made false statements and deliberately deceived the United States Patent and Trademark Office ("USPTO") regarding its use of this mark in connection with these services. (Document No. 38 at ¶¶ 32-41).

In its supporting memorandum, Plaintiff contends that Defendant's fourth counterclaim is legally deficient and factually erroneous. (Document No. 40). Plaintiff argues that an "elemental Internet search" that Defendant could and should have conducted would have revealed that Plaintiff's use of the ASSURANT mark in connection with telemarketing and direct mail services was consistent with its declarations. (Document No. 40 at p. 19). Defendant's response persists in claiming that its investigations show that Plaintiff's use of the mark has not been as Plaintiff declares. (Document No. 42, pp. 13-15).

At this stage of the litigation, the undersigned will decline to weigh the research and investigations purported to have been made by either party. The undersigned finds that Defendant's claim on its face is plausible, and will therefore recommend that the motion to dismiss be denied as to this counterclaim.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Plaintiff's Rule 12(b)(6) Motion To Dismiss Defendant's Second Amended Counterclaims" (Document No. 39) be **GRANTED IN PART AND DENIED IN PART** as follows:

(1) **GRANTED** as to the First Claim for Relief;

(2) **DENIED** as to the Second Claim for Relief;

(3) **DENIED** as to the Third Claim for Relief: and,

(4) **DENIED** as to the Fourth Claim for Relief.

### V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Robert J. Conrad, Jr.

**IT IS SO RECOMMENDED**.

Signed: July 26, 2010

David C. Keesler
United States Magistrate Judge